**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AGC NETWORKS, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-308 LPS |
| RELEVANTE, INC., JOSH HADFIELD, ANTHONY MILLER, SCOTT SMITH, RICHARD TARITY, JENNIFER WAGNER, and EILEEN WAINWRIGHT, | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## DEFENDANTS' ANSWER, AFIRMATIVE DEFENSES AND COUNTERCLAIM

AND NOW, Defendants, Relevante, Inc., Josh Hadfield, Anthony Miller, Scott Smith, Richard Tarity, Jennifer Wagner and Eileen Wainwright, by and through their undersigned Attorneys, and file this Answer to Plaintiff's Complaint.

### NATURE OF THE ACTION

1. Upon information and belief, admitted.
2. Denied. Strict proof thereof is demanded at trial.
3. Denied. Strict proof thereof is demanded at trial.
4. The averments in Paragraph 4 state conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### JURISDICTION AND VENUE

5. The averments in Paragraph 5 state conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.
6. Denied. Strict proof thereof is demanded at trial.

7. Admitted.

8. The averments in Paragraph 8 state conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

9. The averments in Paragraph 9 state conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

10. Admitted.

11. Admitted.

12. The averments in Paragraph 12 state conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

## PARTIES

13. Upon information and belief, admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Denied. Strict proof thereof is demanded at trial.

20. Admitted.

## FACTUAL BACKGROUND

21. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the matters asserted in Paragraph 21, the same are therefore denied and strict proof thereof is demanded at trial.

22. Admitted in part, denied in part. It is admitted only that Miller was an engineer. After reasonable investigation, Defendants lack information sufficient to form a belief as to the

truth of the remaining matters asserted in Paragraph 22, the same are therefore denied and strict proof thereof is demanded at trial.

23. Admitted in part, denied in part. It is admitted only that Hadfield was an account managers for AGC and that Smith as a new account manager for Transcend. It is specifically denied that Wagner was an AGC account manager or that Smith was a new account manager for Transcend. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the remaining matters asserted in Paragraph 23, the same are therefore denied and strict proof thereof is demanded at trial.

24. Admitted in part, denied in part. It is admitted only that Wainwright and Tarity were two members of AGC's sales team. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the remaining matters asserted in Paragraph 24, the same are therefore denied and strict proof thereof is demanded at trial.

25. Admitted in part, denied in part. It is admitted only that Relevante was founded in 2002 and works in manufacturing, retail, finance and education and that it designs and integrates programs, applications, data infrastructure and technology platforms. The allegation that Relevante is a competitor of AGC is a conclusion of law to which no response is required. To the extent a response is required, the same is therefore denied and strict proof thereof is demanded at trial.

26. Denied. Strict proof thereof is demanded at trial.

27. Denied. Strict proof thereof is demanded at trial.

28. Admitted.

29. Admitted in part, denied in part. It is admitted only that on or about March 14, 2013, AGC acquired Transcend. After reasonable investigation, Defendants lack information sufficient to form a determination as to the truth of the remaining allegations in Paragraph 29, the same are therefore denied and strict proof thereof is demanded at trial.

30. Admitted in part, denied in part. It is admitted only that Smith, Miller, Wagner Wainwright and Tarity all executed employment agreements with Transcend. The remaining averments in Paragraph 30 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied. After reasonable investigation, Defendants lack information sufficient to form a determination as

to the truth of the remaining allegations in Paragraph 30, the same are therefore denied and strict proof thereof is demanded at trial.

31. Admitted in part, denied in part. It is admitted only that the aforementioned individuals executed the Transcend agreements attached as Exhibits A through D. It is specifically denied that these were required to "protect AGC's business interest and investments".

32. Denied. The averments in Paragraph 32 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

33. Denied. The averments in Paragraph 33 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

34. Denied. The averments in Paragraph 34 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

35. Denied. The averments in Paragraph 35 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

36. Denied. The averments in Paragraph 36 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

37. Denied. The averments in Paragraph 37 attempt to characterize the contents of the Transcend employment agreements attached to the Complaint as Exhibits A through D. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

13580952v.1

Case 1:14-cv-00308-LPS Document 16 Filed 04/30/14 Page 5 of 19 PageID #: 129

38. Denied. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the averments in Paragraph 38 specifically whether the Transcend agreements were ever assigned to AGC. The same are therefore denied and strict proof thereof is demanded at trial.

39. Admitted in part, denied in part. It is admitted only that Wainwright, Miller, Hadfield, Wagner and Tarity all executed employment agreements with AGC. The remaining averments in Paragraph 30 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied. After reasonable investigation, Defendants lack information sufficient to form a determination as to the truth of the remaining allegations in Paragraph 39, the same are therefore denied and strict proof thereof is demanded at trial.

40. Denied. The averments in Paragraph 40 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

41. Denied. The averments in Paragraph 41 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

42. Denied. The averments in Paragraph 42 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

43. Denied. The averments in Paragraph 43 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

44. Denied. The averments in Paragraph 44 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such

is hereby denied. By way of further answer, Defendant Tarity's AGC agreement contained a specific carve out which allowed him to solicit certain AGC clients.

45. Denied. The averments in Paragraph 45 attempt to characterize the contents of the AGC employment agreements attached to the Complaint as Exhibits E through I. Those Exhibits are writings which speak for themselves and any characterization of the contents of such is hereby denied.

46. Denied. Strict proof thereof is demanded at trial.

47. Admitted in part, denied in part. It is admitted only that Tarity and Miller made their work calendars private. The remaining allegations in this paragraph are denied and strict proof thereof is demanded at trial.

48. Admitted in part, denied in part. It is admitted that on or about March 14, 2013, AGC acquired Transcend. Defendants lack information sufficient to form belief as to exactly what was acquired as part of the transaction by AGC including whether or not any agreements were specifically assigned to AGC, as such the same are therefore denied and strict proof is demanded at trial.

49. Denied. Strict proof thereof is demanded at trial.

50. Admitted in part, denied in part. It is admitted only that Tarity and Miller had closed door meetings with AGC vendor's Shoretel. It is specifically denied that the purpose of these meetings was not disclosed or that either Tarity or Miller attempted to "conceal" these meetings. By way of further answer, these meetings were conducted as Tarity and Miller worked on a proposal for a potential contract for AGC with J.G. Wentworth, which ultimately resulted in a sale in over $600,000 for AGC.

51. Admitted in part, denied in part. It is admitted only that Defendant Tarity terminated his employment with AGC on or about June 21, 2013 and that Tarity began his employment with Relevante in July 2013 and as a partner and president of Relevante. The remaining allegations in this paragraph are denied and strict proof thereof is demanded at trial.

52. Admitted in part, denied in part. It is only admitted that Wainwright is a Chief Operating Officer of Relevante and began her employment there in July 2013. It is specifically denied that she terminated her employment a week after Tarity on June 28, 2013. By way of further of answer, Defendant Wainwright gave her two weeks' notice of her resignation on June

13580952v.1

21, 2013.  AGC determined on June 28, 2103 that that would be Defendant Wainwright's last day period.

       53.      Admitted in part, denied in part.  It is admitted only that on June 28, 2103, AGC drafted letters to both Tarity and Wainwright.  It is specifically denied that these were "cease and desist letters," to the extent that Paragraph 53 attempts to characterize contents of these June 28, 2013 letters, the letters are writings which speak for themselves and any such characterization is therefore denied.  The remaining allegations in this paragraph are denied and strict proof thereof is demanded at trial.

       54.      Admitted in part, denied in part.  It is admitted only that AGC sent Relevante a letter dated July 2, 2013.  The remainder of the allegations contained in Paragraph 54 attempt to characterize the contents of the July 2, 2013 letter, which is a writing which speaks for itself.  The characterizations are therefore denied.

       55.      Admitted in part, denied in part.  It is admitted that in July 2013 Miller resigned from AGC and began working for LiquidHub.  It is further admitted that Tarity was a shareholder of LiquidSpoke.  It is further admitted that LiquidHub is now a customer of Relevante.  It is specifically denied that LiquidSpoke and LiquidHub previously shared the same owner.  Strict proof thereof is demanded at trial.

       56.      Denied.  Strict proof thereof is demanded at trial.

       57.      Denied.  Strict proof thereof is demanded at trial.

       58.      Admitted in part, denied in part.  It is admitted only that in August 2013 Smith became a Lead Development Manager at Relevante.  The remaining allegations in this paragraph are denied and strict proof thereof is demanded at trial.

       59.      Admitted in part, denied in part.  It is admitted only that on or about September 23, 2013, AGC sent a letter to Relevante.  The remaining averments of Paragraph 59 attempt to characterize the contents of the letter which is a writing which speaks for itself.  These characterizations are therefore denied.

       60.      Admitted in part, denied in part.  It is admitted only that  on or about September 25, 2013, AGC sent a letter to Tarity, Wainwright, Miller, Smith, and Wagner.  The remaining averments of Paragraph 60 attempt to characterize the contents of the letter which is a writing which speaks for itself.  These characterizations are therefore denied.

61. Admitted in part, denied in part. It is admitted only that on or about September 27, 2013, Relevante responded to the AGC letter. The remaining averments of Paragraph 61 attempt to characterize the contents of the letter which is a writing which speaks for itself. These characterizations are therefore denied.

62. Admitted in part, denied in part. It is admitted only that on or about October 18, 2013, AGC sent another letter to Relevante. The remaining averments of Paragraph 61 attempt to characterize the contents of the letter which is a writing which speaks for itself. These characterizations are therefore denied.

63. Admitted in part, denied in part. It is admitted only that on or about the dates listed, Tarity solicited the companies listed, all of which were listed in "Exhibit A" to his Employment Agreement with AGC (See Exhibit I to the Complaint), which excluded them from his non-solicitation obligations and specifically permitted him to solicit them. It is specifically denied that Tarity "interfered" with AGC's customers. The allegations in this paragraph are denied for the remaining defendants and strict proof thereof is demanded at trial.

64. Admitted in part, denied in part. It is admitted only that on or about January 3, 2014, Hadfield resigned from his position as senior account manager at AGC and that he is now employed by Relevante. The remaining allegations in this paragraph are denied and strict proof thereof is demanded at trial. By way of further answer, Hadfield responded to a job posting on Relevante's website in fall 2013 and was one of many individuals that interviewed for the position.

65. Admitted in part, denied in part. It is admitted only that on or about the dates listed, Tarity solicited the companies listed, all of which were listed in "Exhibit A" to his Employment Agreement with AGC (See Exhibit I to the Complaint), which excluded them from his non-solicitation obligations and specifically permitted him to solicit them. It is specifically denied that Tarity "interfered" with AGC's customers. The allegations in this paragraph are denied for the remaining defendants and strict proof thereof is demanded at trial.

66. Denied. Strict proof thereof is demanded at trial.
67. Denied. Strict proof thereof is demanded at trial.
68. Denied. Strict proof thereof is demanded at trial.
69. Denied. Strict proof thereof is demanded at trial.

70. Denied. The averments in Paragraph 70 state conclusions to law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

71. Denied. Strict proof thereof is demanded at trial.

### COUNT I – BREACH OF TRANSCEND CONTRACTS
*By Plaintiff against Defendants Miller, Wagner, Smith, and Wainwright*

72. Defendants incorporate by reference its responses to Paragraph 1 through 71 as though set forth herein.

73. Admitted in part, denied in part. It is admitted only that during May 2011, certain individuals executed Transcend agreements. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the averment that those agreements were assigned to AGC through the sale of Transcend. The same is therefore denied and strict proof thereof is demanded at trial. The averments regarding the validity and enforceability of these agreements are conclusions of law to which no response is required. To the extent a response is required, the allegations in this paragraph are denied and strict proof thereof is demanded at trial.

74. The averments in Paragraph 74 attempt to characterize the contents of the Transcend agreements which are writings that speak for themselves. Accordingly, any and all characterizations of those documents are denied and strict proof thereof is demanded at trial.

75. Denied. Strict proof thereof is demanded at trial.

76. Denied. Paragraph 76 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT II – BREACH OF AGC CONTRACTS
*By Plaintiff against Defendants Hadfield, Miller, Tarity, Wagner, and Wainwright*

77. Defendants incorporate by reference its responses to Paragraph 1 through 76 as though set forth herein.

78. Denied. Paragraph 78 attempts to characterize the contents of the AGC agreements which are writings that speak for themselves. Accordingly, any and all characterizations of those documents are denied and strict proof thereof is demanded at trial.

79. Denied. Paragraph 79 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

80. Denied. Paragraph 80 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT III – MISAPPROPRIATION OF TRADE SECRETS

*By Plaintiff against all Defendants*

81. Defendants incorporate by reference its responses to Paragraph 1 through 80 as though set forth herein.

82. Denied. Strict proof thereof is demanded at trial.

83. Denied. Strict proof thereof is demanded at trial.

84. Denied. Strict proof thereof is demanded at trial.

85. Denied. Strict proof thereof is demanded at trial.

86. Denied. Strict proof thereof is demanded at trial.

87. Denied. Strict proof thereof is demanded at trial.

88. Denied. Paragraph 88 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT IV – CONVERSION

*By Plaintiff against all Defendants*

89. Defendants incorporate by reference its responses to Paragraph 1 through 88 as though set forth herein.

90. Denied. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the averments in Paragraph 90, the same are therefore denied and strict proof thereof is demanded at trial . To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

91. Denied. Strict proof thereof is demanded at trial.

92. Denied. The averments in Paragraph 92 attempt to characterize the contents of a number of letters, which are writings which speak for themselves and any such characterization is denied.

93. Denied. Strict proof thereof is demanded at trial.

94. Paragraph 94 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT V – TORTIOUS INTERFERANCE WITH CONTRACTUAL RELATIONS

*By Plaintiff against all Defendants*

95. Defendants incorporate by reference its responses to Paragraph 1 through 94 as though set forth herein.

96. Denied. Paragraph 96 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

97. Denied. Strict proof thereof is demanded at trial.

98. Denied. Paragraph 98 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

99. Denied. Paragraph 99 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

100. Denied. Paragraph 100 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

101. Denied. Paragraph 101 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

102. Denied. Paragraph 102 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

13580952v.1

### COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

*By Plaintiff against all Defendants*

103. Defendants incorporate by reference its responses to Paragraph 1 through 102 as though set forth herein.

104. Denied. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the averments in Paragraph 104, the same are therefore denied and strict proof thereof is demanded at trial. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

105. Denied. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the averments in Paragraph 105, the same are therefore denied and strict proof thereof is demanded at trial. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

106. Denied. Strict proof thereof is demanded at trial.

107. Denied. Strict proof thereof is demanded at trial.

108. Denied. Strict proof thereof is demanded at trial.

109. Denied. Paragraph 109 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT VII – BREACH OF THE DUTY OF LOYALTY

*By Plaintiff against Defendants Hadfield, Miller, Smith, Tarity, Wagner, and Wainwright*

110. Defendants incorporate by reference its responses to Paragraph 1 through 109 as though set forth herein.

111. Denied. Strict proof thereof is demanded at trial.

112. Denied. Paragraph 112 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

113. Denied. Paragraph 113 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

114. Denied. Paragraph 114 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT VIII – BREACH OF THE FIDUCIARY DUTY OF LOYALTY
*By Plaintiff against Defendant Wainwright*

115. Defendants incorporate by reference its responses to Paragraph 1 through 114 as though set forth herein.

116. Denied. Paragraph 116 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

117. Denied. Strict proof thereof is demanded at trial.

118. Denied. Paragraph 118 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT IX – CIVIL CONSPIRACY
*By Plaintiff against all Defendants*

119. Defendants incorporate by reference its responses to Paragraph 1 through 118 as though set forth herein.

120. Denied. Paragraph 120 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

121. Denied. Paragraph 121 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

122. Denied. Paragraph 122 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### COUNT X – UNFAIR COMPETITION

*By Plaintiff against all Defendants*

123. Defendants incorporate by reference its responses to Paragraph 1 through 122 as though set forth herein.

124. Denied. After reasonable investigation, Defendants lack information sufficient to form a belief as to the truth of the averments in Paragraph 124, the same are therefore denied and strict proof thereof is demanded at trial. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

125. Denied. Strict proof thereof is demanded at trial.

126. Denied. Strict proof thereof is demanded at trial.

127. Denied. Strict proof thereof is demanded at trial.

128. Denied. Paragraph 128 states conclusions of law to which no response is required. To the extent an answer is required, the averment is denied and strict proof thereof is demanded at trial.

### PRAYER FOR RELIEF

**WHEREFORE,** Defendants respectfully request this Honorable Court enter judgment in their favor and against Plaintiff, plus court costs and attorney's fees.

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### SECOND AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by waiver.

### THIRD AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by the doctrine unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, because they have an adequate remedy at law.

## SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by Plaintiff's own bad faith.

## EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by privilege.

## NINTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by justification.

## TENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, by the expiration of the restrictions they are attempting to enforce.

## COUNTERCLAIM

## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ACTIVITIES
## RELEVANTE, INC. v. AGC NETWORKS, INC.

1. Counterclaim Plaintiff Relevante ("Relevante") is a Pennsylvania Corporation with a principal place of business of 1235 Westlakes Drive, Berwyn, Pennsylvania.

2. Counterclaim Defendant AGC Networks, Inc. ("AGC") is a Delaware Corporation with its principal place of business in Texas.

3. This Counterclaim arises out of the same transaction or occurrence that is the subject matter of AGC's claim in this action. As such, this is a compulsory counterclaim and this Court has supplemental jurisdiction over the matter.

4. Additionally, this Court has diversity jurisdiction over this matter, as the parties are from different states and the amount in controversy exceeds $75,000.

5. In contemplation of AGC's imminent acquisition of Transcend, the Transcend CEO, Rick Hirsch, informed all employees that their Transcend agreements would not be enforced if they signed an AGC agreement.

6. Tarity had no non-compete or non-solicitation obligations in February 2013.

7. AGC approached Tarity about signing an AGC agreement and Tarity initially told AGC that he would not enter into any kind of restrictive covenant.

8. Following a series of negotiations between AGC and Tarity, it was agreed that Tarity would execute a unique agreement with AGC that would specifically allow him to solicit a number of customers.

9. Tarity's AGC agreement is different than all the others because his non-solicitation restriction references "Exhibit A" of his AGC Agreement, which is a listing of a number of customers that AGC specifically recognized that he was permitted to solicit following his separation from AGC. See Exhibit I to the Complaint.

10. AGC was willing to agree to this limitation on the non-solicitation language because Tarity was essential in bringing new business into Transcend and then AGC.

11. Following the execution of his AGC Agreement, Tarity continued to work diligently to bring new customers and new business in to AGC.

12. Following the execution of his AGC Agreement, Tarity played a key role in getting JG Wentworth to execute a contract with AGC for over $600,000.

13. Following his resignation from AGC, Tarity solicited the customers listed on Exhibit A of his AGC Agreement, just as he was permitted to do.

14. Tarity has been more successful than AGC hoped in his solicitation.

15. The AGC Agreements do not contain non-competition provisions.

16. The AGC Agreements do not prevent any of the individual Defendants from working for Relevante.

17. The AGC Agreements do not prohibit any of the Defendants from contacting companies that are not customers of AGC.

18. The AGC Agreements did not prohibit any of the Defendants, when working for AGC, from applying for jobs with Relevante.

19. Tarity's non-solicitation restriction has a specific exclusion in it that allows Tarity to solicit specific AGC customers listed in "Exhibit A" of his AGC Agreement.

20. Tarity in fact solicited the companies listed in that Exhibit A.

21. In February, 2014, Relevante, through Tarity, approached Public Consulting Group ("PCG") regarding work.

22. PCG is one of the companies specifically excluded from Tarity's non-solicitation restriction.

23. Following discussions, Relevante provided PCG with a quote for work in the amount of $101,432.50

24. On or about April 1, 2014, AGC sent letters to numerous companies listed in Exhibit A to inform them of this lawsuit, their allegations and to inform them that their records will be subpoenaed.

25. It is believed, and therefore averred, that AGC sent these letters specifically to intimidate clients listed in Tarity's Exhibit A from switching over to Relevante.

26. Following receipt of the April 1, 2014, letter, PCG informed Relevante that they would not be accepting the quote due to the AGC letter and that absent that, PCG would have accepted Relevante's quote.

27. Relevante believes and therefore avers that other potential clients were also discouraged by AGC's intentional actions.

28. Relevante believes, and therefore avers, that it had a valid business relationship or expectancy with PGC and other potential clients listed in Tarity's Exhibit A.

29. Relevante believes, and therefore avers, that AGC knew of Relevante's valid business relationship or expectancy with PGC and other potential clients listed in Tarity's Exhibit A.

30. Relevante believes, and therefore avers, that AGC intentionally interfered with Relevante's valid business relationship or expectancy with PGC and other potential clients listed in Tarity's Exhibit A.

31. Relevante believes, and therefore avers, that AGC's intentional interference caused a breach or termination of Relevante's valid business relationship or expectancy with PGC and other potential clients listed in Tarity's Exhibit A.

32. Relevante believes, and therefore avers, that the breach or termination of Relevante's valid business relationship or expectancy with PGC and other potential clients listed in Tarity's Exhibit A caused Relevante to incur damages in excess of $75,000.

33. AGC's actions were in bad faith and were designed to specifically harm Relevante.

34. AGC's actions were without privilege and were designed to specifically harm Relevante.

WHEREFORE, Relevante respectfully invokes the remedial powers of this Honorable Court and prays for the following:

(a) A permanent injunction preventing AGC from tortiously interfering with Relevante's prospective business opportunities;

(b) Monetary damages in excess of $75,000 to compensate Relevante for its loss of business caused by AGC's tortious interference with Relevante's prospective business opportunities, at a specific amount to be determined at trial;

(c) An award of pre-judgment and post-judgment interest; and

(d) Any other equitable or legal relief that is appropriate to remedy AGC's tortious behavior.

> WHITE AND WILLIAMS LLP
>
> /s/ Marc S. Casarino
> Marc S. Casarino (No. 3613)
> White and Williams LLP
> 824 North Market Street ,Suite 902
> Wilmington, DE 19899-0709
> Telephone: 302-654-0424
> casarinom@whiteandwilliams.com
> *Attorney for Defendants Relevante, Inc., Josh Hadfield, Anthony Miller, Scott Smith, Richard Tarity, Jennifer Wagner and Eileen Wainwright*
>
> and
>
> /s/ Jeffrey S. Stewart
> Jeffrey Stewart, Esquire
> Norris McLaughlin & Marcus, P.A.
> t: 610.391.1800
> f: 610.391.1805
> e: jstewart@nmmlaw.com
> www.nmmlaw.com
> 1611 Pond Road, Suite 300
> Allentown, PA 18104-2221